# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BARATA, et al.,** | Civ. No. 2:13-4274 |
| Plaintiffs, | (KM)(MAH) |
| v. | **OPINION** |
| **NUDELMAN, KLEMM & GOLUB, P.C.,** | |
| Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the court on the motion (ECF No. 20) of Defendants to dismiss the First Amended Complaint ("Complaint") (ECF No. 18). Plaintiffs Isilda Barata and Rosinete Trabach bring this action individually and on behalf of a putative class of similarly situated individuals against Defendant Nudelman, Klemm & Golub, P.C. ("NKG"), for a violation of §1692e(3) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.*[1] Plaintiffs allege that Defendant's debt collection letters to them falsely represented that there was meaningful attorney involvement in reviewing debtor files prior to the letters being sent.

For the reasons set forth below, the motion to dismiss is **GRANTED**.

## I.   BACKGROUND

Plaintiffs Isilda Barata and Rosinete Trabach are New Jersey residents who are each obligated, or allegedly obligated, to pay a debt to

---

[1]   This Opinion does not address any issues regarding class certification, consideration of which would be premature.

1

a creditor. (Compl. ¶¶1–4, ECF No. 18). As such, Barata and Trabach are consumers as defined by 15 U.S.C. §1692a(3). (*Id.* ¶5). Barata and Trabach sue on behalf of themselves and all those similarly situated (collectively, "Consumers").

Defendant Nudelman, Klemm & Golub, P.C. is a New Jersey corporation that collects debts on behalf of creditors. (*Id.* ¶6). NKG is a law firm and a debt collector within the meaning of 15 U.S.C. §1692a(6). (*Id.* ¶¶8, 32).

Barata and Trabach have defaulted on personal debts owed to Capital One Bank (USA), N.A. ("Capital One"). (*Id.* ¶¶22–25). Capital One sent both Barata and Trabach letters on July 11, 2012 in an attempt to collect their debts. (*Id.* ¶¶28–29). The letters are printed on NKG letterhead. The law firm's name, "Nudelman, Klemm & Golub, P.C." is printed in bold capitalized text at the top of the page, along with the names of seven of the firm's attorneys. The letter is signed in the firm's name. (*Id.* ¶¶32–35).

The letter contains no disclaimer of attorney involvement. The Complaint alleges, however, that "no licensed attorney was directly or personally involved in reviewing materials sufficient to make a professional judgment with regards to the validity of the [debts]." (*Id.* ¶36). That being the case, NKG necessarily "was acting solely as a debt collector and not in any legal capacity." (*Id.* ¶37). The complaint also states that these "factual contention[s are] made on the belief that after inquiry that [sic] will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." (*Id.* ¶¶36–37).

The Consumers allege that the letters are misleading because they imply attorney review but NKG in fact was acting solely as a debt collector and not in any legal capacity. (*Id.* ¶¶38–39). The Consumers allege that the letters misleadingly imply that an attorney has reviewed

each debtor's file and determined that the debtor is a candidate for legal action. (*Id.* ¶¶40–42).

The Consumers allege that, because of the sheer number of collection letters sent by NKG to the Consumers, "it is virtually impossible for NKG to undertake the attorney involvement required under the FDCPA." It follows, they say, that NKG must be sending the letters without sufficient attorney involvement, a fraudulent practice under 15 U.S.C. §1692e(3). (*Id.* ¶¶43–44). The letters, they say, would be read by the consumer as falsely representing "that there was meaningful attorney involvement by a licensed attorney prior to the letters being sent." (*Id.* ¶50).

NKG now moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1337, and 1367.

## II.   APPLICABLE STANDARDS
### a. Standard

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### b. FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(a). To effectuate that purpose, the Act allows for a private cause of action by debtors against debt collectors. *See* 15 U.S.C. § 1692k. "When such a suit is filed, courts within this Circuit evaluate collection letters and notices for compliance with the Act 'from the perspective of the least sophisticated debtor.'" *Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. CIV.A. 07-5139, 2008 WL 2885887 at *3 (D.N.J. July 23, 2008) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (internal quotation and citation omitted)). The Third Circuit has explained how this standard is applied:

> The basic purpose of the least-sophisticated debtor standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. . . . [T]his standard is less demanding than one that inquires whether a particular communication would mislead or deceive a reasonable debtor. Nevertheless, the standard does not go so far as to provide solace to the willfully blind or non-observant. The debtor is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care, and the debt collector accordingly cannot be held liable for bizarre or idiosyncratic interpretations. For example, even

4

> the least sophisticated debtor is expected to read any notice in its entirety.

*Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 149 (3d Cir. 2013) (internal quotations and citations omitted).

Often, the parties dispute do not dispute the actual contents of a collection letter, but the legal consequences thereof. A Rule 12(b)(6) motion may thus be a suitable vehicle for a court to decide whether the least sophisticated debtor would be deceived or misled by the debt collector's communications. *See Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 147 (3d Cir. 2013) ("whether language in a collection letter contradicts or overshadows the validation notice is a question of law."); *Wilson*, 225 F.3d at 353 n.2 ("The majority of courts to have considered this question have . . . held that this determination involves a question of law."); *Smith*, 2008 WL 2885887 at *3 ("whether the least sophisticated debtor would be misled by a particular communication is a question of law that may be resolved in a Rule 12(b)(6) motion.").

### III.  ANALYSIS

NKG moves to dismiss the complaint because it does not plead any facts tending to suggest that there is any foundation for the allegation that no attorney reviewed the letters before they were sent. (Def. Mot. 7). The Consumers argue that they have stated a claim for a violation of §1692e(3) based on the sheer number of letters sent. (Pl. Opp. 10). Because the Consumers have not pled sufficient facts to raise the inference that the letters were sent without meaningful attorney involvement, their complaint will be dismissed.

Section 1692e(3) of the FDCPA prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." I recently discussed at length the

5

legal standards governing such a claim, including the effect, if any, of a written disclaimer of attorney involvement. *See Bock v. Pressler and Pressler, LLP*, 30 F. Supp. 3d 283 (D.N.J. 2014).[2]

Judge Cavanaugh has previously dismissed a §1692e(3) claim where the plaintiff "failed to allege what in the Letter was false, or what about the Letter was misleading to Plaintiff." *Vargas v. Frederick J. Hannah & Assoc.*, No. 12-3802, slip op. at 4 (D.N.J. Feb. 14, 2013). In that case, the plaintiff only pled that the debt collection letter was sent by the defendant and that it was on law firm letterhead. *Id.* The contention that the defendant was not acting in a legal capacity he found to be conclusory, not factual. *Id.* at 2. *Vargas* held that without any sufficient factual allegation of what in the letter was false, plaintiff could not sustain a claim for a violation of §1692e(3).

Here, the Consumers summarily assert that NKG did not act in a legal capacity, but sent out letters suggesting that it did. The only factual basis for this allegation is the "number of collection letters" sent by NKG, a circumstance that supposedly implies that meaningful attorney review was "impossible." (Compl. ¶ 36)

To be sure, there may be an extreme case in which a single attorney or group of attorneys produced an impossibly large number of letters in a short time. That fact, in combination with others, might suggest that no attorney gave the letters meaningful attorney review. *See Bock, supra* (awarding summary judgment where, among other factors,

---

[2]   *Bock* discussed *Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993 (3d Cir. 2011), the case primarily relied on by the Consumers here. As NKG points out, the Consumers' analysis of the *Lesher* opinion is actually an extended, unacknowledged quotation from Chief Judge Simandle's opinion in a separate case. (Def. Reply 7 n.3); *compare* (Pl. Opp. 7–10) *with Eddis v. Midland Funding, L.L.C.*, No. CIV. 11-3923 JBS/AMD, 2012 WL 664812, at *6–7 (D.N.J. Feb. 28, 2012). The Consumers have, without citation, copied word-for-word more than two pages of prose, a departure from accepted standards of writing, let alone legal advocacy.

the evidence showed that a single attorney gave an average of 4 seconds of review before signing each collection complaint). To be remotely plausible, however, such an allegation would have to give some notion of how many letters were produced, how many attorneys produced them, and the length of time involved.

The complaint in this case falls short of even suggesting such facts. It simply posits that discovery will turn up the necessary facts, and then doubles back and uses those hypothetical facts to corroborate its hypothetical claims. There is no allegation as to how many collection letters NKG actually sent to debtors. The complaint does not even suggest an order of magnitude, referring to the volume of letters as simply a "number," implying that it must be a large "number." But that number, whatever it is, is simply said to be the subject of future "inquiry," presumably in discovery. There is no allegation as to how many attorneys may have worked on the letters, over what period of time. The Complaint is based on nothing more than the "belief that after inquiry that [sic] it will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." (Compl. ¶36).

To be sure, the Federal Rules permit allegations made on information and belief. *See* Fed. R. Civ. P. 11. But such pleading "does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to ... make claims ... without any factual basis or justification." *Id.*, Notes of Advisory Committee on 1993 Amendments; *see also Bock, supra,* 30 F.3d at 304. There is no indication that the Consumers conducted any pre-complaint investigation at all. This Complaint, on its face, as much as admits that the Consumers possess no information concerning the single, central factual allegation that

7

underlies their cause of action.[3]

A complaint cannot go forward based on unsupported allegations, coupled with the hope that something will turn up in discovery. "Discovery ... cannot serve as a fishing expedition through which plaintiff searches for evidence to support facts he has not yet pleaded." *Giovanelli v. D. Simmons Gen. Contracting*, No. CIV.A 091082NLHAMD, 2010 WL 988544, at *5 (D.N.J. Mar. 15, 2010) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 577 (2007)).

This Complaint asserts an unsupported "belief" that discovery may reveal that there was no meaningful attorney review of these collection letters. That is not enough. The motion to dismiss the Complaint for failure to state a claim is granted.

## IV.   CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED**, and the First Amended Complaint is **DISMISSED without prejudice**.

Dated: February 19, 2015

_____
**Kevin McNulty**
**United States District Judge**

---

[3] The class action allegations, too, contain an indirect admission that plaintiff has no notion of how many letters were produced, or by how many attorneys, or over how long a period of time: "Upon information and belief, the Class is so numerous that joinder of all members is impracticable because there are hundreds and/or thousands of persons who have received debt collection letters and/or notices from NKG." (*Id.* ¶48; *see also* ¶36).